# United States Court of Appeals for the Fifth Circuit

No. 20-60944

United States Court of Appeals
Fifth Circuit

**FILED**

June 8, 2022

Lyle W. Cayce
Clerk

Maryuri Yessenia Castellon-Villalobos;
Daniela Del Socorro Garcia-Castellon;
Fernando Daniel Garcia-Castellon,

*Petitioners*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

---

Petition for Review of an Order of
the Board of Immigration Appeals
No. A 208 681 668
No. A 208 681 669
No. A 208 681 670

---

Before Smith, Wiener, and Southwick, *Circuit Judges*.

Per Curiam:*

Maryuri Castellon-Villalobos and her two minor children, Daniel Garcia-Castellon and Fernando Garcia-Castellon, petition for review of the

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

decision of the Board of Immigration Appeals ("BIA") dismissing their appeal of the orders of the immigration judge (I.J.) denying asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Because the BIA's findings were supported by sufficient evidence, we deny the petition.

## I.

The petitioners are citizens of Nicaragua. Castellon-Villalobos entered the United States illegally in 2015.[1] Shortly thereafter, the Department of Homeland Security initiated proceedings to remove her. It sent her a notice to appear in December 2015 but did not specify the date and time of her removal hearing. That information came in a separate notice of hearing sent to Castellon-Villalobos in February 2016. Castellon-Villalobos appeared at her hearing. She later acknowledged proper service of her notice to appear.

Castellon-Villalobos applied for asylum, withholding of removal, and protection under the CAT. Her application noted that she had an abusive relationship with her mother, that she had been threatened with kidnapping of her children and murder, and that her mother had left the Frente Sandinista de Liberación Nacional ("FSLN"), the ruling party in Nicaragua. She also identified a particular social group to which she claimed to belong: "Female Nicaraguan Victims of Domestic Violence."

At the merits hearing, Castellon-Villalobos moved to terminate proceedings for want of jurisdiction. She maintained that, under *Pereira v. Sessions*, 138 S. Ct. 2105, 2113–14 (2018), her notice to appear had been defective because it did not specify the date and time of her hearing. The I.J. denied

---

[1] The record does not reflect independent findings regarding Castellon-Villalobos's children. The children's claims wholly derive from Castellon-Villalobos's, so we do not separately address them.

No. 20-60944

that motion, reasoning that *Pereira* did not alter the immigration court's jurisdiction.  At the hearing, Castellon-Villalobos provided additional facts, including that her uncle had attempted to sexually assault and kill her when she was twelve and that she feared torture from the FSLN because she had refused to join the party.  The I.J. found Castellon-Villalobos to be credible but nonetheless rejected her application and ordered her removed.

The BIA dismissed Castellon-Villalobos's appeal.  It affirmed the I.J.'s denial of Castellon-Villalobos's jurisdictional challenge.  The BIA also agreed with the I.J. that Castellon-Villalobos had not established a probability of persecution on account of her political opinions and that her proposed social group was not legally cognizable.  Castellon-Villalobos's CAT claim also failed because she had not had any problems with police or other government agents.  She timely petitioned this court to review the decision.

## II.

We review the decision of the BIA and reach the I.J.'s decision only if it had an impact on the BIA.  *Sharma v. Holder*, 729 F.3d 407, 411 (5th Cir. 2013).  Because the BIA expressly relied on the I.J.'s opinion, we may review both decisions.  We review questions of law *de novo*, *id.*, but "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).  Whether a petitioner is eligible for asylum, withholding of removal, and relief under CAT are factual conclusions.  *See Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006).

## III.

Castellon-Villalobos's first theory is that the I.J., and thus the BIA, never had jurisdiction to consider her claims.  The I.J.'s jurisdiction is a question of law and thus reviewed *de novo*.  But Castellon-Villalobos's theory is foreclosed by precedent.

Title 8 U.S.C. § 1229 requires that aliens subject to removal proceedings be given a notice to appear that includes, among other things, "[t]he time and place at which the proceedings will be held." *Id.* § 1229(a)(1)(G)(i). Castellon-Villalobos's notice did not include that information—it was sent later in a separate notice of hearing. That defect, she says, deprived the I.J. of jurisdiction.

Castellon-Villalobos asserts that her position is supported by *Pereira*, which held that a notice to appear that did not include the time of hearing was insufficient to trigger the "stop-time rule," a feature of immigration law that is not at issue in this case. *See Pereira*, 138 S. Ct. at 2110. The Supreme Court later reaffirmed and strengthened that holding in *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021), concluding that a notice to appear must be "a single document containing the required information," (quotation marks omitted). We confirmed that that reasoning applies not just to the stop-time context but also to aliens who were ordered removed *in absentia* despite not receiving a complete notice to appear. *See Rodriguez v. Garland*, 15 F.4th 351, 355–56 (5th Cir. 2021), *reh'g en banc denied*, 31 F.4th 935 (5th Cir. 2022) (mem.).

But we have expressly rejected the contention that failure to include all the required information in a notice to appear deprives the I.J. of jurisdiction. For purposes of jurisdiction, "a notice to appear is sufficient to commence proceedings even if it does not include the time, date, or place of the initial hearing." *Maniar v. Garland*, 998 F.3d 235, 242 (5th Cir. 2021) (quotation omitted). That is because charging documents in proceedings before an I.J. are governed not by § 1229(a), the crucial provision in *Niz-Chavez* and *Rodriguez*, but by 8 C.F.R. § 1003.14, which does not require all the information to be in a single document. *See Garcia v. Garland*, 28 F.4th 644, 646–48 (5th Cir. 2022). We are bound to accept the holdings of prior panels, and so we reject Castellon-Villalobos's position that the I.J. lacked jurisdiction.

IV.

As explained, the BIA denied Castellon-Villalobos's application for asylum, withholding of removal, and protection under the CAT. Those first two decisions collapse into each other: Withholding of removal and asylum are governed by overlapping standards. Whereas asylum is a discretionary form of relief, withholding of removal is mandatory and, accordingly, requires a stronger showing from the applicant. *See Vazquez-Guerra v. Garland*, 7 F.4th 265, 270–71 (5th Cir. 2021). Thus, "the failure to establish a well-founded fear for asylum eligibility also forecloses eligibility for withholding of removal." *Id.* at 271 (quotation omitted). Because Castellon-Villalobos fails to demonstrate eligibility for asylum, we do not separately analyze her request for withholding of removal.

The Attorney General has discretion to grant asylum to "refugee[s]." 8 U.S.C. § 1158(b)(1)(A). To be a refugee, an alien must generally show that he or she is "unable or unwilling to return to" his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Castellon-Villalobos avers that she meets that standard either because of her membership in a particular social group—namely, female Nicaraguan victims of domestic violence—or because of her political decision not to join the FSLN.

Castellon-Villalobos's "particular social group" theory is unavailing. To begin with, "female Nicaraguan victims of domestic violence" is likely not a cognizable social group under § 1101(a)(42)(A). Under the BIA's prevailing decisions, to which we defer in accordance with *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), a particular social group must "(1) consist of persons who share a common immutable charac-teristic; (2) be defined with particularity; and (3) be socially visible or distinct

within the society in question," *Gonzales-Veliz v. Barr*, 938 F.3d 219, 229 (5th Cir. 2019) (citing *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)). Castellon-Villalobos has presented no evidence that her proposed group is socially distinct within Nicaraguan society, and the experience of a particular type of harm is generally not sufficient to qualify as an immutable characteristic. *See id.* at 232 (rejecting the proposed group "Honduran women unable to leave their relationship" for similar reasons). And even if Castellon-Villalobos's group is cognizable, she has not demonstrated, or even clearly alleged, that she has suffered, or will suffer, persecution *because of* her membership in that group.

Neither has Castellon-Villalobos made a sufficient showing that she was persecuted, or reasonably fears persecution, for her political opinions. Castellon-Villalobos testified that she had refused to join the FSLN and that her mother had left the party, and that members of the party's youth wing had thrown rocks at her house. She also presented evidence that the FSLN sometimes engages in violence against perceived enemies. But she did not testify that anyone in the FSLN had used or threatened violence against her. She claimed to have received kidnapping and death threats, but she attributed those threats to her perceived access to money and did not connect them to the FSLN. Castellon-Villalobos had the burden to show that her persecution occurred because of her political affiliation. *See Tamara-Gomez v. Gonzales*, 447 F.3d 343, 349 (5th Cir. 2006). The BIA determined that Castellon-Villalobos had not born that burden, and we cannot say that any reasonable factfinder would have concluded otherwise.

Castellon-Villalobos's CAT claim also fails. Unlike asylum or withholding of removal, protection under the CAT does not require Castellon-Villalobos to show that she will be persecuted for any particular reason. *See id.* at 350. But CAT eligibility does require that the applicant will more likely than not be tortured and that that torture will be inflicted by or with the

acquiescence of a public official. *See Iruegas-Valdez v. Yates*, 846 F.3d 806, 812 (5th Cir. 2017).

Castellon-Villalobos does not claim to have had any adverse interactions with Nicaraguan officials. When she went to the police after receiving threats, they duly wrote a report. Though she wished they had assigned the case a higher priority, "the failure to apprehend the persons threatening the alien" is not enough state action to establish CAT eligibility. *Tamara-Gomez*, 447 F.3d at 351. The FSLN is also closely connected to the Nicaraguan state, but Castellon-Villalobos does not claim to have been tortured or threatened with torture by that group either. Thus, we cannot reverse the BIA's determination that Castellon-Villalobos did not show she likely would be tortured by government actors.

The BIA's conclusions that Castellon-Villalobos was ineligible for asylum, withholding of relief, and protection under the CAT were all well grounded in the record. The petition for review is therefore DENIED.