# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 20, 2021

Lyle W. Cayce
Clerk

No. 18-60667

RAJEN MANIAR,

*Petitioner*,

*versus*

MERRICK GARLAND, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A098 275 719

Before BARKSDALE, ELROD, and HO, *Circuit Judges*.
JAMES C. HO, *Circuit Judge*:

The Board of Immigration Appeals (BIA) determined that Rajen Maniar is removable from the United States for having committed an aggravated felony under 8 U.S.C. § 1101(a)(43)(U). That provision defines "aggravated felony" to include, *inter alia*, any "attempt or conspiracy to commit an offense" enumerated in § 1101(a)(43). Maniar claims that the BIA erred because, he contends, § 1101(a)(43)(U) requires proof of an overt act in furtherance of the conspiracy. But we need not decide that question, because we conclude that Maniar's conviction for conspiracy to commit money laundering plainly constitutes an aggravated felony under

§ 1101(a)(43)(D). And his remaining contentions are either meritless or unexhausted. Accordingly, the petition for review is denied in part and dismissed in part.

## I.

Maniar lawfully entered the United States on an H1B visa. In 2017, he pleaded guilty to three federal offenses—including conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h)—and was ordered to pay over $26 million in restitution. He served just one month of imprisonment as a result of his cooperation with the United States Attorney's office.

The government then initiated removal proceedings against Maniar. The immigration judge (IJ) found Maniar removable under the Immigration and Nationality Act (INA) because he was "convicted of an aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). Specifically, the IJ determined that Maniar had committed an aggravated felony as defined in (1) § 1101(a)(43)(D) (an offense described in 18 U.S.C. §§ 1956–57 involving more than $10,000); (2) § 1101(a)(43)(M) (a crime of fraud, deceit, or tax evasion involving more than $10,000); and (3) § 1101(a)(43)(U) (an "attempt or conspiracy to commit an offense described in this paragraph").

In finding Maniar removable under the conspiracy provision, the IJ rejected Maniar's argument that § 1101(a)(43)(U) covers only convictions that required proof of an overt act in furtherance of the conspiracy. *Cf. Whitfield v. United States*, 543 U.S. 209, 211 (2005) (holding that a conviction for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) does *not* require proof of an overt act). In short, the IJ determined that it is irrelevant that Maniar's crime did not require proof of an overt act— it's still an aggravated felony under 8 U.S.C. § 1101(a)(43)(U).

Maniar then attempted to avoid removal by adjusting his immigration status. As part of that process, Maniar sought to obtain a waiver of inadmissibility under 8 U.S.C. § 1182(h). But the IJ determined that Maniar is inadmissible under § 1182(a)(2)(I)(ii)—which covers "a knowing . . . conspirator . . . with others in an offense . . . described in [18 U.S.C. § 1956 or § 1957]"—and that waivers are not available for aliens who are inadmissible on those grounds.

While his appeal was pending before the BIA, Maniar filed two additional motions. First, he moved to terminate his removal proceedings on the ground that his notice to appear was defective under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). Second, he moved to acquire the transcripts of all the hearings related to his removal proceedings.

The BIA ruled that Maniar's 18 U.S.C. § 1956(h) conviction is an aggravated felony under the conspiracy definition of 8 U.S.C. § 1101(a)(43)(U), agreeing with the IJ that § 1101(a)(43)(U)—like 18 U.S.C. § 1956(h)—does not require proof of an overt act in furtherance of the conspiracy. The BIA also affirmed the IJ's conclusion that Maniar is ineligible for a waiver of inadmissibility, declined to terminate the proceedings under *Pereira*, and ruled that all of the allegedly non-transcribed hearings had in fact been continued. Maniar petitions this court for review.

## II.

### A.

"We must begin by determining whether we have jurisdiction to review the BIA's decision." *Rodriguez v. Holder*, 705 F.3d 207, 210 (5th Cir. 2013) (quoting *Nehme v. INS*, 252 F.3d 415, 420 (5th Cir. 2001)). The government claims that we lack jurisdiction to consider Maniar's petition under the "criminal alien review bar" of 8 U.S.C. § 1252(a)(2)(C). That provision generally "limits the scope of [judicial] review [of a final order of

removal] where the removal rests upon the fact that the alien has committed certain crimes, including aggravated felonies." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067 (2020).

But another provision of the INA expressly "permits judicial review of 'constitutional claims or questions of law.'" *Id.* at 1071 (quoting 8 U.S.C. § 1252(a)(2)(D)). *See also Nasrallah v. Barr*, 140 S. Ct. 1683, 1690 (2020) (explaining that, in cases "involving noncitizens convicted of [certain] crimes," "a court of appeals may review constitutional or legal challenges to a final order of removal, but . . . not . . . *factual* challenges").

We have previously held that "whether a conviction qualifies as an aggravated felony" is a "question[] of law." *Shroff v. Sessions*, 890 F.3d 542, 544 (5th Cir. 2018). And that is precisely the type of question presented here—whether Maniar has committed an aggravated felony under 8 U.S.C. § 1101(a)(43)(U). Accordingly, we have statutory jurisdiction over this claim.

## B.

We decline to answer Maniar's legal question, however. For it does not ultimately matter whether Maniar has committed an aggravated felony under 8 U.S.C. § 1101(a)(43)(U). That is because he has clearly committed an aggravated felony under § 1101(a)(43)(D).

Section 1101(a)(43)(D) defines "aggravated felony" to include those offenses that are "described in section 1956 of Title 18 (relating to laundering of monetary instruments) . . . if the amount of funds exceeded $10,000." That provision easily applies here. Maniar pleaded guilty to conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and the funds involved well exceeded $10,000. A § 1956(h) violation is obviously "an offense described in section 1956 of Title 18." 8 U.S.C. § 1101(a)(43)(D). Accordingly, Maniar is removable because he has committed an "aggravated

felony" under the plain language of § 1101(a)(43)(D). *See id.* § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable.").

## C.

Maniar contends that, because the BIA based its conclusion on § 1101(a)(43)(D) *in conjunction with* § 1101(a)(43)(U), we would violate the *Chenery* doctrine if we were to base our decision solely on § 1101(a)(43)(D), as we do today.

It is a "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015) (citing *SEC v. Chenery Corp.* (*Chenery I*), 318 U.S. 80, 87 (1943)). We have accordingly recognized that "[w]e may *usually* only affirm the BIA on the basis of its stated rationale." *Luna-Garcia v. Barr*, 932 F.3d 285, 291 (5th Cir. 2019) (emphasis added). *See also Kwon v. INS*, 646 F.2d 909, 916 (5th Cir. 1981) (en banc) (citing *SEC v. Chenery Corp.* (*Chenery II*), 332 U.S. 194 (1947)).

But our circuit precedents have made clear that this rule is not absolute, at least in the immigration context. *See Luna-Garcia*, 932 F.3d at 291. ("[I]n certain circumstances, there may be limited exceptions to this rule."). Indeed, "[e]ven if there is a reversible error in the BIA's analysis, affirmance may be warranted 'where there is no realistic possibility that[] . . . the . . . BIA would have reached a different conclusion.'" *Id.* (quoting *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010)). *See also Nguhlefeh Njilefac v. Garland*, 992 F.3d 362, 365 (5th Cir. 2021) ("[E]ven if the [BIA] erred at some point in its analysis, we can still uphold its ultimate decision if there is no realistic possibility that [its] conclusion would have been different absent the error.") (quotations omitted). As the Supreme Court has observed, "[t]o remand would be an idle and useless formality.

*Chenery* does not require that we convert judicial review of agency action into a ping-pong game." *Morgan Stanley Cap. Grp. v. Pub. Util. Dist. 1 of Snohomish Cnty.*, 554 U.S. 527, 545 (2008) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion)).

Maniar committed an aggravated felony under the plain language of § 1101(a)(43)(D). We find "no realistic possibility that the BIA would reach another outcome than to dismiss [Maniar's] appeal." *Luna-Garcia*, 932 F.3d at 292. "Accordingly, we . . . deny [Maniar's] petition for review on th[is] alternative ground[]." *Id.*[1]

## III.

The remainder of Maniar's claims are either meritless or unexhausted.

First, Maniar disputes the BIA's determination that he is ineligible for an adjustment of status, arguing that he is eligible to receive a waiver of inadmissibility under 8 U.S.C. § 1182(h).

The Attorney General may adjust the status of an alien, but only if the alien is "admissible . . . for permanent residence." 8 U.S.C. § 1255(a). And "[a]ny alien . . . who . . . the Attorney General knows . . . has been[] a knowing

---

[1] Of course, if the meaning of the statutory terms were at all in doubt, we would be obliged to allow the agency an opportunity to interpret the statute in the first instance. *See Negusie v. Holder*, 555 U.S. 511, 517 (2009) (explaining that "[w]hen the BIA has not spoken on 'a matter that statutes place primarily in agency hands,'" such as the interpretation of "ambiguous statutory terms," the "ordinary rule is to remand to 'giv[e] the BIA the opportunity to address the matter in the first instance in light of its own expertise'") (quoting *INS v. Orlando Ventura*, 537 U.S. 12, 16–17 (2002) (per curiam)). *Cf. Pereira*, 138 S. Ct. at 2113 (explaining that a court "need not resort to *Chevron* deference" when "Congress has supplied a clear and unambiguous answer to the interpretive question at hand").

aider, abettor, assister, conspirator, or colluder . . . in an offense described in [18 U.S.C. § 1956 or § 1957] . . . is inadmissible." *Id.* § 1182(a)(2)(I)(ii).

Maniar responds that the Attorney General may "waive the application" of certain inadmissibility provisions—"subparagraphs (A)(i)(I), (B), (D), and (E) of subsection (a)(2) and subparagraph (A)(i)(II)." *Id.* § 1182(h). But noticeably absent from this list of waivable provisions is subparagraph (I)(ii) of subsection (a)(2).

Maniar nevertheless insists he cannot be inadmissible under § 1182(a)(2)(I)(ii) because that provision—unlike 18 U.S.C. § 1956(h)— allegedly requires proof of an overt act in furtherance of the conspiracy.

Whatever the merits of this argument may be, we lack jurisdiction to consider it. This court may review final orders of removal "only if . . . the alien has exhausted all administrative remedies." 8 U.S.C. § 1252(d). And "[a]n alien fails to exhaust his administrative remedies" when he does not raise an issue "in the first instance before the BIA." *Wang v. Ashcroft*, 260 F.3d 448, 452–53 (5th Cir. 2001).

Here, Maniar failed to alert the BIA to his "overt act" challenge to the IJ's determination that he is statutorily ineligible for a waiver of inadmissibility—even though he raised a very similar argument in response to the IJ's separate determination that he is statutorily removable. Thus, Maniar failed to exhaust his administrative remedies and we lack jurisdiction. *Vazquez v. Sessions*, 885 F.3d 862, 868 (5th Cir. 2018) ("The exhaustion requirement is statutorily mandated; 'an alien's failure to exhaust his administrative remedies serves as a jurisdictional bar to our consideration of the issue.'") (quoting *Wang*, 260 F.3d at 452).

Second, Maniar asserts that the record supporting the IJ's decision is "insufficient" because the IJ allegedly failed to transcribe certain hearings. According to Maniar, he "is prejudiced by at least one missing transcript"—

the transcript of the hearing in which the IJ allegedly said it would not accept a late brief from the government.  Had he access to this transcript, Maniar assures us, he would be able to "make a complete due process argument or an argument about the immigration judge acting as an advocate and not an impartial adjudicator."

As best we can tell, this is a due process challenge.  But "[d]ue process challenges to deportation proceedings require an initial showing of substantial prejudice." *Anwar v. INS*, 116 F.3d 140, 144 (5th Cir. 1997).  And Maniar does not explain how the IJ's failure to transcribe hearings or reject the government's brief did (or even could) affect the analysis of the purely legal issues that the BIA and this court review de novo.  Maniar thus fails to demonstrate any prejudice, let alone substantial prejudice.  So his due process challenge fails.

Finally, Maniar argues that neither the IJ nor the BIA ever acquired jurisdiction over his removal proceedings because his notice to appear was defective.  He contends that his notice's failure to name the time and place of future removal proceedings constitutes a fatal defect under 8 U.S.C. § 1229(a)(1)(G)(i) and the Supreme Court's decision in *Pereira*.

We have already "join[ed] the overwhelming chorus of our sister circuits" in rejecting attempts to "extend *Pereira*'s narrow holding beyond the stop-time rule context." *Pierre-Paul v. Barr*, 930 F.3d 684, 689 (5th Cir. 2019), *abrogated in part on other grounds by Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1479–80 (2021).  It is "the regulations, not 8 U.S.C. § 1229(a), [that] govern what a notice to appear must contain to constitute a valid charging document." *Id.* at 693.  And "[u]nder the regulations, a notice to appear is

No. 18-60667

sufficient to commence proceedings even if it does not include the time, date, or place of the initial hearing." *Id.* In sum, *Pereira* does nothing for Maniar.[2]

\* \* \*

To the extent Maniar argues that the BIA erred in finding him ineligible for a waiver of inadmissibility, his petition is dismissed. In all other respects, the petition is denied.

---

[2] Nor does *Niz-Chavez* affect our duty to follow our panel precedent in *Pierre-Paul*. In *Niz-Chavez*, the Court held that, "[t]o trigger the stop-time rule, the government must serve 'a' notice containing all the information Congress has specified"—"'a' single document containing the required information, not a mishmash of pieces with some assembly required." 141 S. Ct. at 1480. By contrast, our decision in *Pierre-Paul* involved the use of a notice to appear as a charging document under INA regulations—not for purposes of the stop-time rule under 8 U.S.C. § 1229(a). To be sure, *Niz-Chavez* undermines one of the rationales of our decision in *Pierre-Paul*—namely, that a "two-step process comports with relevant statutory language." *Pierre-Paul*, 930 F.3d at 691. But *Niz-Chavez* does not dislodge our ultimate holding in *Pierre-Paul* that it is "the regulations, not 8 U.S.C. § 1229(a), [that] govern what a notice to appear must contain to constitute a valid charging document." *Id.* at 693. Nor does it alter our conclusion that "*Pereira* does not extend outside the stop-time rule context." *Id.* at 689. To the contrary, *Niz-Chavez* itself described its decision as "the next chapter" of the *Pereira* saga. 141 S. Ct. at 1479. Accordingly, *Pierre-Paul* remains the law of our circuit. *See, e.g.*, *Gruver v. La. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, 959 F.3d 178, 181 (5th Cir. 2020) ("For a Supreme Court decision to constitute a change in the law that enables a panel to take a fresh look at an issue, it must mark an unequivocal change, not a mere hint of how the Court might rule in the future.") (quotations omitted).